
**UNITED FRUIT COMPANY**
v.
**UNITED STATES.**

Nos. 460–56, 568–57.

United States Court of Claims.

April 7, 1961.

See also 168 F.Supp. 549.

William I. Denning, Washington, D. C., for plaintiff. Alan F. Wohlstetter, Ernest H. Land, and Joseph F. Mullins, Jr., Washington, D. C., were on the briefs.

Thomas F. McGovern, Washington, D. C., with whom was Asst. Atty. Gen. William H. Orrick, for defendant. Leavenworth Colby, Washington, D. C., was on the brief.

LARAMORE, Judge.

These are two cases resulting from a long standing dispute between plaintiff and the United States concerning compensation for the transportation of mails by steamship. In both cases plaintiff sues for compensation for the carriage of mail sacks between the United States and foreign ports, in No. 460–56, for the period October 1, 1950 to July 31, 1954, and in No. 568–57, for the period August 1, 1954 to December 31, 1956. Also, in No. 568–57, plaintiff claims compensation for the transportation of mails from the post offices to its vessels for the period August 1, 1954 to December 31, 1956.

During the periods involved plaintiff operated a steamship line between New York or New Orleans, on the one hand, and various ports in Central and South America, the Panama Canal Zone, and islands in the Caribbean area, on the other. Some of the vessels operated by plaintiff were registered under the flag of the United States, some under the flag of Honduras, and certain others were of European registry.

The mails transported by plaintiff during the periods in question consisted of letters, prints, parcel post, registered mail and diplomatic dispatches, and were both domestic mails and mails of foreign origin. All of the pieces of mail were in mail sacks. Plaintiff also transported mail sacks containing empty sacks being returned to the country of origin. Most of these empty sacks were sacks which had originally contained mails sent by steamship to the United States or to a foreign country, and which were being returned to the country of origin through the United States postal service; some of them were air mail sacks which had con-

tained mails flown into the United States and which were being returned by steamship. Defendant confesses liability for proper compensation for the carriage of the latter sacks.

Section 1724, 18 U.S.C., as amended by the Act of September 25, 1951 (65 Stat. 336), authorizes the Postmaster General to require the transportation of mail at a compensation authorized by law. The statute appears in a note below.[1]

Section 125.2(b) of the Postal Laws and Regulations (1948) required that plaintiff receive all outgoing mail at the post offices to be transported by truck to plaintiff's vessels for transportation to foreign ports, and also required plaintiff to deliver to the post offices all incoming mail. The regulations as amended on June 30, 1954, relieved plaintiff of the duty of bringing incoming mails from the vessels to the post offices; incoming mails were accepted by the post offices on the piers, effective August 1, 1954.

The law, which was the Act of February 14, 1929 (45 Stat. 1175), 39 U.S.C.A. § 654(a), authorized the Postmaster General to fix the rates of compensation for the transportation of the mails by steamship at not more than 80 cents a pound for letters and 8 cents a pound for other articles, including parcel post. Pursuant to this authority, he fixed the rates set out in paragraph (3) (b) of section 120.7 of the same Postal Laws and Regulations (1948). This paragraph reads:

"*Definite rates.* Unless otherwise specially provided, payment shall be made for the transportation of United States mails and foreign closed transit mails on steamships of both United States registry and foreign registry, and for the transportation to the United States of mails which the United States is obligated to convey, at the rates of 8.8 cents a pound for mails consisting of letters and postcards and 1.1 cents a pound for mails consisting of other articles, including parcel post, for distances up to and including 300 nautical miles; 23.7 cents a pound for mails consisting of letters and postcards and 2.9 cents a pound for mails consisting of other articles, including parcel post, for distances from 300 up to and including 1,500 nautical miles, and 35.5 cents a pound for mails consisting of letters and postcards and 4.7 cents a pound for mails consisting of other articles, including parcel post, for distances exceeding 1,500 nautical miles."

In applying the rates of compensation as fixed by the Postmaster General, there was deducted the weight of the mail sacks from the weight of the sacks with the letters and packages contained therein, and compensation was paid based upon the net weight of the mails. No additional compensation was paid for returning the empty sacks.

The question presented is whether the rates of compensation fixed by the Postmaster General were intended to cover all the services required in order to transport the letters, postcards, and other articles, including parcel post.

■ So far as the transportation of the sacks containing the mail is concerned, we think the rate fixed by the Postmaster General for the carriage of the letters and postcards covered the carriage of the sacks which contained them. It would have been impossible to have carried the letters and postcards

---

1. "§ 1724. Except as otherwise provided by treaty or convention the Postmaster General may require the transportation by any steamships of mail between the United States and any foreign port at the compensation fixed under authority of law. Upon refusal by the master or the commander of such steamship or vessel to accept the mail, when tendered by the Postmaster General or his representative, the collector or other officer of the port empowered to grant clearance, on notice of the refusal aforesaid, shall withhold clearance until the collector or other officer of the port is informed by the Postmaster General or his representative that the master or commander of the steamship or vessel has accepted the mail or that conveyance by his steamship or vessel is no longer required by the Postmaster General."

without putting them in something. In order to carry them, for which the stated rate was to be paid, the steamship company had to carry the sacks. Had there been any intention to pay additional compensation for the carriage of the sacks, the regulations would have said so. The absence of a provision for payment of additional compensation for their carriage would seem to show that none was to be paid.

The provision for payment for the carriage of "other articles, including parcel post," referred to the contents of the sacks, not to the sacks themselves. The preceding specific clause clearly referred to the contents and presumably the following general clause did so also. This is in accord with the rule of *ejusdem generis*.

The sacks were valuable and were used over and over. So, both parties knew that in order to carry the letters and postcards the steamship company had to bring the sacks back. It would seem that the rate fixed for carrying the letters and postcards, not only covered carrying the sacks in which they were contained, but also covered bringing back the empty sacks.

As the Commissioner's findings show, the practice of paying compensation for the carriage of the letters and postcards and the sacks in which they were contained, based on the weight of the letters and postcards alone, was of long standing. For a very long time the course of action of the Post Office Department shows that it intended the compensation fixed for the carriage of the letters and postcards to include the carriage of the things containing the letters and postcards. No additional compensation has ever been paid for the carriage of the sacks or for the return of them.

For a long time the steamship companies did not protest against this. (They say that they did not protest because they did not know the basis used by the Post Office Department in computing their compensation. This is a lame excuse. It would have been simple enough for them to have found out the basis of computation, if it is true that the Post Office Department would not tell them, by weighing the mails themselves.) More recently they have protested. On June 16, 1950, prior to the period for which compensation is sought in this suit, plaintiff's vice president wrote the Postmaster General saying that for a long time they had protested non-payment of additional compensation for the carriage of the sacks, and it served notice that it would expect additional compensation in the future.

The Acting Assistant Postmaster General replied on July 14, 1950, in which he quoted the regulation fixing the rates and the duty of the steamship companies to carry the mails and then said:

"With very few exceptions, to our knowledge, it is the universal practice not to pay for the weight of sacks used in connection with the dispatch of regular or parcel post mails or for the return of empty sacks, either in transit through foreign countries or by steamers. Compensation is paid on the net weight of the mail involved. This practice has been followed for a great number of years and is apparently based on the following provisions of the Universal Postal Union Convention, the present one being that of Paris of July 5, 1947: * * * "

He said further that the matter was under study by a committee of the Universal Postal Union, and he concluded:

"We are sympathetic towards your problem and agree it is necessary that some action be taken towards adopting a universally uniform system as regards possible payment for the weight of sacks used in connection with the dispatch of mails as well as for the return of empty equipment. However, until such time as a change in procedure might be adopted by the Universal Postal Union, we regret it will be necessary for you to accept any mails tendered to steamers of the United

Fruit Company by the United States postal authorities in accordance with the rules and regulations as set forth by the Postmaster General."

This letter was written prior to the period involved in the present suits. It stated what the long continued practice had been and that this practice would be continued until changed by the Universal Postal Union. That practice was to pay for the carriage of the letters and postcards and other articles and the sacks in which they were contained, and for the return of the empty sacks, on the basis of the weight of the letters and postcards and other articles, exclusive of the sacks.

In short, plaintiff's protest was rejected, and it was stated that the ancient practice would be continued.

This, of course, was equivalent to saying that the rates fixed covered the carriage of the sacks, both ways, as well as the articles which they contained. Since the Postmaster General had the authority to fix the rates, this would seem to conclude the matter.

As the findings show, the Postal Union Convention held subsequent to the date of the letter of the Assistant Postmaster General, to wit, the Brussels Convention of 1952, refused to change the basis for the payment of compensation, and continued to compute it on the net weight of the contents of the sacks.

■ This leaves the claim for compensation for picking up the mail at the post offices and taking it to the steamships. It will be recalled that section 1724 of Title 18 U.S.C. as amended, authorized the Postmaster General to "require the transportation by any steamships of mail between the United States and any foreign port at the compensation fixed under authority of law." As stated above, section 125.2(b), as amended, required the steamship companies to come to the post office to pick up the outgoing mail. The rates fixed by the Postmaster General were intended by him to cover

compensation for this service, as well as the transportation by sea.

As we said above, in discussing the claim for additional compensation for the carriage of the sacks, if it had been intended to pay additional compensation for their transportation, the regulations fixing rates would have said so. The failure to provide for additional compensation indicates that the rates fixed for the carriage of the letters, etc., included all services incidental thereto, and that embraced the duty, in the opinion of the Postmaster General, of coming to the post office to get the outgoing mail.

For many years prior to 1954, steamship companies had been required to pick up outgoing mail at the post office and to deliver incoming mail to the post office. As far back as 1889 the Assistant Attorney General in charge of post office matters rendered an opinion in which he said:

"It has before been stated that the transfer of all mails between steamships and post office at New York and elsewhere is made by the steamship companies and at their expense, and the compensation to such steamships is supposed to cover the cost of this service; in other words, that the compensation is for the transfer at ports of arrival and departure as well as for the conveyance by sea. There is therefore an implied contract between the United States and every vessel carrying mails to and from the United States and foreign ports that the latter will pay all the expense of moving said mails out of and into the post office; and this implied contract has assumed the force of positive written agreement, sustained by an unbroken line of precedents running through many years. * * *" 2 Op.Assist.Att.Gen. for Post Office Dept., p. 765.

Since the Postmaster General in fixing the rates of compensation, acted within his authority, and since it seems that the rates fixed were intended to cover the

transportation of mail to and from the post offices, until 1954, and thereafter to cover transportation of outgoing mail from the post offices to the pier, we are of opinion plaintiff is not entitled to recover therefor.

What we have said above, however, does not apply to empty sacks brought back to the place of origin by plaintiff's steamships, but which had been used in the transportation of letters, etc., by airplane. There was no duty on plaintiff as a carrier of the mails to return these sacks to the place of origin, and when plaintiff was requested to do so and it did so, it was entitled to compensation therefor.

So far as the basis for plaintiff's compensation is concerned, in returning the sacks it was not acting as a carrier of the mails, since it had not used them to carry the letters, etc., from the point of origin. It was acting only as a carrier of cargo. Its relationship to the sacks was no different from its relationship to any other cargo. But, so far as our jurisdiction is concerned, these empty sacks were an adjunct of the United States mails and, as such, were exempt from a libel *in rem* in the courts of admiralty. As we stated in our former opinion in this case, 168 F.Supp. 549, 144 Ct.Cl. 154, we do not think the Suits in Admiralty Act (41 Stat. 525), 46 U.S.C.A. § 741 et seq., was intended to apply to a suit involving the carriage of the mails; nor do we think it applies to the carriage of something so intimately connected with the carriage of the mails as a mail sack.

Defendant admits plaintiff is entitled to compensation for the carriage of these sacks, but it does not state to us how it thinks it ought to be computed. Since plaintiff had a published tariff for the carriage of empty mail sacks, it would appear it is entitled to be compensated on the basis of this tariff.

Plaintiff is entitled to recover for the last mentioned item, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.

It is so ordered.

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, and DURFEE and MADDEN, Judges, concur.